BERGSTEDT, APPELLEE, *v.* STEINBACHER, ADMINISTRATOR, OHIO BUREAU OF EMPLOYMENT SERVICES, APPELLANT; BERGSTEDT BUILDERS, APPELLEE. (FOUR CASES.)

(Nos. 7-84-6, -7, -8 and -9—Decided September 3, 1985.)

*Michael J. Wesche,* for appellees Michael L. and Joe D. Bergstedt.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Fred Pompeani,* for appellant Roberta Steinbacher, Administrator.

GUERNSEY, P.J. These are four separate appeals of the Administrator, Ohio Bureau of Employment Services, from judgments of the Court of Common Pleas of Henry County reversing decisions of the Unemployment Compensation Board of Review, hereinafter referred to as "the board."

Prior to December 1979, appellees Michael L. Bergstedt and Joe D. Bergstedt, hereinafter referred to as "the brothers," were employed by their father Don Bergstedt, doing business as Bergstedt Builders, as skilled workmen in the building-remodeling business. Because of unavailability of work, the father laid the brothers off in the early part of December 1979, and they thereupon sought and obtained unemployment benefits through the local office of the Ohio Bureau of Employment Services at Napoleon. Another brother, also working for the father, was retained on

the payroll to do such work as might turn up. Shortly afterwards the father and mother of the brothers bought a somewhat run-down home as an investment and the father and the three brothers went to work on the home, doing the same kind of remodeling work that they had done before the layoff. However, the brothers, who each worked approximately forty hours per week during the same time of day when most other work for wages is performed, received no compensation from the father specifically directed to or measured by the work that they did. Instead, they continued to receive their unemployment benefits and, after the father had sought advice as to same from the bureau's Napoleon office, received from the father payments intended by the father to qualify as "private unemployment benefits" under the provisions of R.C. 4141.36. These payments, as made by the father, were measured as a percentage of the respective unemployment benefit payments which the brothers were receiving, and are commonly referred to as "sub" payments. The third brother, who was also working on the investment property, continued to be compensated by the father as an employee of his business and would leave work on the investment property to do other work on other places as such work became available to the business.

One of the brothers here involved lived with his parents during the time in question and the other brother lived elsewhere with his wife. Their mother remained in the parents' home most of each day babysitting with children and was available to the residential phone, the number of which had been left with the bureau office and with prospective employers in the event that they wished to reach either of the brothers. A neighbor living near the investment property was willing to receive and convey calls to the brothers at their work, if necessary, and the father returned to his home each noon for his lunch and could likewise convey messages.

The unemployment compensation payments continued to be made to the brothers through the week ending May 10, 1980. On August 25, 1980, the administrator, having apparently been made aware of the situation which had existed by the receipt at Napoleon of an anonymous communication, mailed an order to the brothers to repay the unemployment benefits which they had received for the reason that they had allegedly made fraudulent misrepresentations with the intent of obtaining benefits to which they were not entitled. When such repayments were not forthcoming, the administrator commenced administrative proceedings against each of the brothers. Two of the claims, one against each brother, were for unemployment benefits received for the weeks ending December 15, 1979 to January 5, 1980. The other two claims covered the weeks ending January 12, 1980 through May 10, 1980. Michael Bergstedt had received benefits of $432 and $2,286, respectively, for these two periods while Joe Bergstedt had received $372 and $2,214, respectively, for the same two periods.

After initial proceedings the administrator's claims were presented as appeals to the board and consolidated for hearing before the board's referee in that they involved the same issues. The referee determined that the brothers made no fraudulent misrepresentations, allowed their unemployment benefits for the 1979 weeks, but disallowed their benefits and ordered repayment for the weeks in 1980. The referee further held that the "sub" pay did not constitute earnings and was not to be deducted from the benefits.

Both the administrator and the brothers filed applications to institute further appeals to the board, which allowed the applications and directed a

further consolidated hearing before another referee, after which the board held on all the evidence (1) that the brothers did not make fraudulent misrepresentations with the object to obtain benefits to which they were not entitled; (2) that the benefits received for the 1979 weeks are disallowed and should be repaid because the brothers did not actively seek suitable work; and (3) that the benefits received for the 1980 weeks are disallowed and should be repaid because the brothers were neither available for work, nor were they actively seeking suitable work. The board further found that the "sub" pay received by the brothers did not qualify under the provisions of R.C. 4141.36, thus constituting earnings and was deductible as such. Joe Bergstedt was ordered to repay to the bureau a total of $2,588 and Michael Bergstedt was ordered to repay to the Bureau a total of $2,718.

It was this decision as to the four cases which was then appealed by the brothers to the Court of Common Pleas of Henry County, the appeals being consolidated for hearing. That court decided that the administrator had not established guidelines for qualifications of private unemployment plans under R.C. 4141.36, that the board's decision that provisions of the Internal Revenue Code should apply is unlawful and unreasonable, and that the payments made by the father to the brothers with the intent that they constitute private unemployment benefits qualified as such and should not be deducted by the administrator from unemployment benefits as earnings.

The lower court next determined, in essence, that to be disqualified from receiving unemployment benefits, one must both be performing services and be receiving remuneration. The court also found "a total lacking of creditable [sic] evidence to find that the Appellants were not generally available nor that

they were able and willing to accept work and/or employment for compensation."

Based on these determinations, expressed in this ambiguous manner, the lower court reversed the decisions of the board specifically finding in its order that "the plan of Bergstedt Builders is a qualified one, that payments received by the Appellants are in fact qualified, that both Appellants were available for work and did actively seek work." No further order was made. The administrator then perfected her appeal from these judgments to this court assigning reversible error of the common pleas court:

1. In finding that R.C. 4141.29(A)(4)(a), the available for work section, requires that a claimant must not only perform services but also must receive remuneration in order to be ineligible for unemployment compensation benefits.

2. In substituting its judgment for that of the trier of fact, the board of review, on the factual issue of whether the claimants were available for work as required by R.C. 4141.29(A)(4)(a).

We note at the outset that the administrator does not present any assignment of error directed to the propriety of either the common pleas court's determination on the "sub" pay issue, or its determination of the issue of seeking suitable work. We will not, therefore, further address either of these issues except as they may bear specifically on the errors assigned.

The first assignment of error is directed at that portion of the lower court's opinion wherein it addressed the fact that the brothers performed services but received no remuneration paid specifically for the services. It reads:

"The brief, memorandum and oral argument of the Appellee makes [sic] such issue as to the performing of 'service' by both Appellants. The gist of same appears to be that by the performing of services they were not actively

seeking employment nor that they were ready and willing to accept a job if one came along. To this Court that seems to miss the mark of the statutes involved in that, constantly, they have been interpreted to mean services — remuneration in a co-existent state. * * *"

We note that while the administrator's assignment of error alleges a misinterpretation by the lower court of R.C. 4141.29(A)(4)(a), that court's quoted discussion is not specifically directed to such subdivision but apparently directed, instead, to that court's quoted discussion of R.C. 4141.01(M), a definitional section of the unemployment compensation Act which reads:

"An individual is 'totally unemployed' in any week during which he performs no services and with respect to such week no remuneration is payable to him."

Disregarding the administrator's allusion to the wrong statutory section, as allegedly misinterpreted, we nevertheless find erroneous the lower court's conclusion that a claimant for unemployment benefits is not disqualified to receive same by reason of services performed unless remuneration is received co-existent with such services.

Our construction of R.C. 4141.01(M) corresponds, instead, with its interpretation by other Ohio appellate courts:

"The statute is clear. One who either performs services or receives remuneration in a given week is not 'totally unemployed.'"

*Rini* v. *Unemployment Comp. Bd. of Review* (1983), 9 Ohio App. 3d 214, 215. See, also, *Richards* v. *Ohio Bureau of Employment Services* (May 25, 1978), Cuyahoga App. No. 37419, unreported; *May* v. *Bd. of Review* (Jan. 9, 1980), Summit App. No. 9406, unreported; *In re DeLuca* (June 19, 1979), Franklin App. No. 79AP-28, unreported.

The use of the word "and" in the statutory definition is not meant to be read conjunctively. It is obvious that if one does not perform "services" in any given week, no remuneration will be payable to him with respect to such week. Reading the "and" conjunctively would add little meaning to the statute. It is possible, however, to be paid during one week for services rendered in previous weeks. Such was the situation in *Nunamaker* v. *U.S. Steel Corp.* (1965), 2 Ohio St. 2d 55 [31 O.O.2d 47]. In that case, the Ohio Supreme Court applied a disjunctive reading to the definitional section when it decided that certain benefits received by the claimants therein during the weeks in question while laid off qualified as remuneration and thus precluded entitlement to unemployment benefits.

Thus, as a matter of law, ineligibility for unemployment benefits does not require co-existence of performance of services and remuneration, as the lower court opined, but occurs in any week in which services are performed *or* with respect to such week, remuneration is received. We therefore find the first assignment of error well-taken.

The second assignment of error involves a claim that the common pleas court substituted its factual finding for that of the board on the issue of the brothers' availability for work.

The Ohio Supreme Court has stated that there is "no hard and fast rule as to what constitutes availability for work" but that "[a]vailability * * * depends * * * on the facts and circumstances in each case * * *." *Leonard* v. *Board of Review* (1947), 148 Ohio St. 419 [36 O.O. 60], paragraph one of the syllabus. As well, "decision of purely factual questions is primarily within the province of the referee and the board of review. The courts reverse such decisions only when found to be contrary to law or against the manifest weight of the evidence." *Brown-Brockmeyer Co.* v. *Roach* (1947), 148 Ohio St. 511, 518 [36 O.O. 167].

In the case *sub judice,* the board

stated that in view of the brothers' token search for work efforts and the number of hours spent at remodeling their father's home, it must conclude that its referee properly held the brothers did not meet the eligibility requirements of the Revised Code.

The lower court found "a total lacking of creditable [*sic*] evidence to find that * * * [the brothers] were not generally available." If, however, the board had before it evidence to support its factual finding, the lower court's decision on availability cannot be sustained.

The evidence was uncontradicted that the brothers were spending at least forty hours a week, during the same hours that most other employment exists, helping to remodel a home recently purchased by their parents at which location they were not instantly accessible. There was also evidence, through testimony elicited from the brothers that, if other suitable employment was offered them, that they would accept it, although they would give priority to other employment offered by their father. There was thus direct and inferential evidence supporting either view on the availability issue. Accordingly, it cannot be properly concluded, as the lower court concluded, that the board's factual finding was against the manifest weight of the evidence.

Given the directives of *Leonard, supra,* that each case dealing with availability must be decided on its own facts, we do not decide, as a matter of law, that time spent in the same manner and quantity as in this case would, *ipso facto,* in all cases, preclude a person from being available for work within the meaning of R.C. 4141.29(A)(4)(a). However, as the board made a supportable factual finding that the brothers were unavailable for work, we find that the lower court erred in substituting its judgment for that of the trier of fact.

The second assignment of error is, therefore, well-taken.

Thus, notwithstanding that the administrator has not contested the finding and determination of the common pleas court as to the seeking of suitable work and as to the qualifications of the "sub" plan, our sustaining of the second assignment of error requires reversal of the judgment of the lower court as to its finding and determination as to the availability for work and operates to reinstate that part of the board's decisions finding the brothers not available for work. Under the provisions of R.C. 4141.29(A)(4)(a), this lack of availability for work mandatorily disqualifies any individual from being entitled to benefits for any week that such lack of availability exists. Accordingly, the brothers, not being available for work during the periods of time in question, must repay the unemployment benefits which they have received for those periods of time.

*Judgments reversed.*

COLE and MILLER, JJ., concur.